Two questions are presented in this case: (1) whether a certain "utility trailer" is covered by the language of the driver's automobile insurance policy so that his insurer must provide primary coverage for an accident arising out of the use of the trailer; and, if it is not covered, then (2) whether the insured's insurer is estopped from denying primary coverage after having previously made payment to the injured plaintiff for property damage caused in the accident.
On October 5, 1988, the insured, Morris Sherrill, was driving his pickup truck and towing a trailer owned by his employer, Wadsworth Contractors, Inc. (hereinafter referred to as "Wadsworth"). The trailer was specially manufactured by Wadsworth to haul PVC pipe to and from job sites, and attached to the trailer was an Alabama license plate with the prefix "TR." Sherrill was driving on a public road when the trailer came unhitched from the vehicle and struck the vehicle of Fred Demo. It is undisputed that at the time of the accident, Sherrill was towing the trailer to a job site on behalf of his employer, Wadsworth, and that Wadsworth compensated Sherrill for the business-related use of his pickup truck.
Sherrill's insurer, Allstate Insurance Company ("Allstate") settled with Demo and paid him for his property damage claim against Sherrill by paying him $4,369.71 on March 6, 1989, and $223.60 on May 3, 1989. Allstate then sent Sherrill a reservation of rights letter on July 28, 1989. On August 7, 1989, Demo sued Wadsworth and Sherrill, alleging negligence and wantonness and seeking damages for his personal injuries. Allstate then filed a complaint against Wadsworth's insurer, Amerisure Insurance Companies ("Amerisure"), seeking a judgment declaring that it had no obligation to defend or indemnify Sherrill in Demo's personal injury suit.
Amerisure answered Allstate's complaint, admitting that it had primary coverage for Wadsworth but stating that any coverage for Sherrill was secondary and excess to Allstate's coverage for Sherrill. Amerisure also averred that Allstate had waived any defenses and was estopped from denying Sherrill a defense or denying him coverage because Allstate had already made payment to Demo for his property damage. On September 13, 1990, the trial court entered a summary judgment in favor of Allstate, holding that Allstate owed no coverage to Sherrill with regard to this accident. Amerisure appealed.
We initially address the question whether Allstate's policy covers the "utility trailer" towed by Sherrill. The Allstate policy includes, as part of its definition of "Insured Auto," the following:
 "(5) A trailer, while attached to an insured auto, designed for use with a private passenger auto or utility auto. This trailer can't be used for business purposes with other than a private passenger auto or utility auto." (Emphasis added).
"Utility auto" is defined by the Allstate policy as "an auto with a rated load capacity of 2,000 pounds or less of the pick-up body, sedan delivery or panel type truck."
Based on a reading of this policy language, it appears that the facts in this case would support a finding that the trailer towed by Sherrill is covered by the Allstate policy. Allstate argued to the trial court that the subject trailer was not included in this definition because the Registration Section of the Motor Vehicle Division of the Alabama Department of Revenue had issued a "TR" tag rather than a "UT" tag for the trailer, and that this classification *Page 1102 
removed the trailer from its coverage. Evidence presented by Allstate revealed that "TR" trailers are normally large trailers designed with no front wheels and having a combination gross vehicle weight of more than 12,000 pounds, and that "UT" trailers are personal utility trailers designed to be towed behind a private passenger or utility vehicle and having a combination gross weight of less than 12,000 pounds.
Allstate also presented evidence that the trailer towed by Sherrill was made with three axles from a mobile home, was 9 feet wide and 20 feet long, and required a special 2 5/16-inch ball hitch; and that on the day of the accident the trailer was being used to transport two pieces of equipment weighing 300 or 400 pounds each.
Amerisure argues that the trailer was obviously designed to be towed by a pickup truck and that Sherrill was clearly towing the trailer with a utility auto as defined by Allstate's policy. Amerisure also contends that the fact that the Motor Vehicle Division issued a "TR" tag for the trailer does not affect the fact that the trailer was designed for use with Sherrill's pickup truck.
It is well recognized that ambiguities in an insurance contract are to be resolved in favor of the insured and that exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage to the insured.Altiere v. Blue Cross Blue Shield of Alabama, 551 So.2d 290
(Ala. 1989); Jackson v. Prudential Ins. Co. of America,474 So.2d 1071 (Ala. 1985). It is equally recognized that if the policy terms are plain and free from ambiguity, then there is no room for construction and it is the court's duty to enforce the policy as written, Id. at 1073.
We hold that the language of the policy is not ambiguous, and that the trailer is covered by its terms. Clearly, the trailer was designed to be towed by a "utility auto," as defined by the policy, because Sherrill had on numerous occasions towed the trailer with his personal pickup truck. The fact that the Alabama Motor Vehicle Division decided to assign a "TR" tag rather than a "UT" tag to the trailer does not work to modify the language of Allstate's policy, which plainly states that the trailer is covered if it is "designed for use with a private passenger auto or utility auto." It is apparent that this trailer was "designed for use" with Sherrill's pickup truck; thus, we hold that the trailer is necessarily covered by Allstate's policy.
Because of our holding on this issue, we need not address whether Allstate is estopped from denying coverage as to Demo's personal injury claim.
For the foregoing reasons, the judgment of the trial court is reversed and this cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.