Burkes Mechanical, Inc. ("Burkes"), appeals from a judgment entered against it indemnifying Ft. James-Pennington, Inc. ("Ft. James"), in the amount of $989,963.19, which represented Ft. James's payment to settle an action against it, plus attorney fees and litigation expenses. We affirm.
This dispute arises out of events that occurred in 1997 at a pulp and paper mill owned and operated by Ft. James in Choctaw County ("the mill"). On April 12, 1997, Burkes agreed in an "on-site addendum to Fort James Corporation purchase order" ("the contract") to construct or "install hardwood screening" at the mill. The contract contained the following pertinent provisions:
 "10. Before starting the Work, [Burkes] shall deliver to [Ft. James] satisfactory evidence of the following insurance coverage with carriers acceptable to [Ft. James]:
 ". . . .
 "B. Comprehensive General Liability with Contractual and Products/Completed Operations coverage . . ., both with minimum combined single limits of $1,000,000 each occurrence for bodily injury and property damage.
 ". . . .
 "[Burkes] shall cause [Ft. James] to be named as additional insured in each such policy of insurance, each of which shall contain a severability of interest clause, shall be primary and not excess to or contributory to any other applicable insurance or self-insurance which [Ft. James] might have and shall waive any right of subrogation against [Ft. James], its employees and agents. . . . Such insurance shall be maintained in effect until final completion of the Work. . . . This insurance provision shall not limit [Burkes's] liability to [Ft. James] under Paragraph 11 below or otherwise.
 "11. [Burkes] shall indemnify and hold harmless [Ft. James], its employees and agents from any claim, charge, *Page 907 liability or damage for bodily injury, occupational sickness or disease or death of any person, including, without limitation, any employee of [Burkes] or any subcontractor, or for any physical damage to property, or loss of use thereof, which arises or grows out of performance or malperformance of the [contract] and is caused by [Burkes], including its subcontractors and its and their employees, agents and suppliers, in whole or in part or jointly with [Ft. James] unless proximately caused solely by the negligence or willful misconduct of [Ft. James]. Upon [Ft. James's] written request, [Burkes] shall, at its own expense, defend any suit, action or other proceeding asserting a claim covered by the foregoing indemnity, and [Burkes] shall pay all costs, including attorneys' fees and litigation costs, incurred in enforcement. [Burkes's] obligations to defend, indemnify and hold harmless under this Paragraph shall not be limited or otherwise affected by any insurance which supplier may carry under Paragraph 10 above or otherwise or by any insurance which [Ft. James] may carry.
 ". . . .
 "20. [Burkes] shall not be liable for any loss, claim, expense or damage caused solely by the negligent acts or omissions, or willful misconduct, of [Ft. James] or third parties."
(Emphasis added.)
At that time, Burkes had in force a "Commercial General Liability Coverage" policy issued by Fidelity Guaranty Insurance Company ("Fidelity"). The policy declarations listed Burkes as the "Named Insured." A "certificate of liability insurance" was provided to Ft. James listing Ft. James as the "Additional Insured," with bodily-injury coverage of $1,000,000, as required by the contract. The policy stated, in pertinent part:
 "Throughout this policy the words `you' and `your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.
 ". . . .
 "SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS
 ". . . .
 "2. Duties In the Event of Occurrence, Offense, Claim, Or Suit.
 "a. You must see to it that we are notified as soon as practicable of an `occurrence' or an offense which may result in a claim. To the extent possible, notice should include:
 "(1) How, when and where the `occurrence' or offense took place;
 "(2) The names and addresses of any injured persons and witnesses; and
 "(3) The nature and location of any injury or damage arising out of the `occurrence' or offense.
 "b. If a claim is made or `suit' is brought against any insured, you must:
 "(1) Immediately record the specifics of the claim or `suit' and the date received; and
 "(2) Notify us as soon as practicable.
 "You must see to it that we receive written notice of the claim or `suit' as soon as practicable.
 "c. You and any other involved insured must:
 "(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or `suit'; *Page 908 
 "(2) Authorize us to obtain records and other information;
 "(3) Cooperate with us in the investigation or settlement of the claim or defense against the `suit'; and
 "(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply."
(Emphasis added.)
The policy included an endorsement for "Additional Insureds" ("the endorsement"), which provided, in part:
 "2. In addition to the other exclusions applicable to COVERAGES A, B, and C, the insurance provided to an ADDITIONAL INSURED does not apply to:
 ". . . .
 "c. `Bodily injury' . . . which is not caused in whole or in part by the negligent acts or omissions of any Named Insured, or the negligent acts or omissions of anyone directly or indirectly employed by a Named Insured or for whose acts a Named Insured may be liable."
(Emphasis added.)
On July 8, 1997, while performing his duties as an employee of Burkes, Jimmy James slipped and fell on the mill premises. He brought a worker's-compensation action against Burkes, and, on May 24, 2000, was awarded benefits on the basis of permanent and total disability. Burkes appealed from the judgment in the worker's-compensation action. On March 30, 2001, the Court of Civil Appeals affirmed that judgment without opinion. BurkesMech., Inc. v. James (No. 2991084), 823 So.2d 62 (Ala.Civ.App. 2001) (table).
Meanwhile, on April 28, 1999, Jimmy James sued Ft. James, averring that Ft. James negligently or wantonly "allowed the floor of the premises to become wet and covered with . . . chemicals which made the surface slippery and unsafe." On August 5, 1999, the trial court granted a "petition for intervention." The petition, which purported to be filed by Burkes, stated:
 "COMES NOW Burkes Mechanical, Inc. and moves this honorable court to intervene in the above styled case and states as follows:
 "1. Burkes Mechanical, Inc. has an interest in the above referenced case in that Jimmy James is a former employee of Burkes Mechanical, Inc. At the time of the alleged exposure, he was working within the line and scope of his employment with Burkes Mechanical, Inc.
 "2. Under the Alabama Workers' Compensation Act, Burkes Mechanical, Inc. may become obligated to pay certain medical expenses and indemnity benefits to Jimmy James. To that extent, Burkes Mechanical, Inc. will be subrogated to both indemnity payments and medical expenses.
 "3. Goff Group is the workers' compensation carrier for Burkes Mechanical, Inc.
 "4. Under the Alabama Workers' Compensation Act both Burkes Mechanical, Inc. and Goff Group are entitled to reimbursement for compensation and medicals paid to Jimmy James.
 "WHEREFORE, PREMISES CONSIDERED, Burkes Mechanical, Inc. moves this honorable court to intervene in the above styled case and demands judgment against the defendants to the extent of its subrogation lien."
The petition was signed by "Attorney for Burkes Mechanical, Inc." *Page 909 
On January 17, 2001, counsel for Ft. James addressed a letter to the president of Burkes, demanding that Burkes defend and indemnify Ft. James in James's action against it. The letter stated, in pertinent part:
 "Please be advised that I represent [Ft. James] in an action filed by one of your employees, Jimmy James. I enclose a copy of that suit which is pending in the Circuit Court of Choctaw County, Alabama, case number CV-99-015-M. As you can see, this action is based upon an accident which occurred at the Ft. James Mill while Jimmy James was working for your company. At the time of the accident, James was working inside the mill pursuant to a contract entered into between [Burkes] and Ft. James. Pursuant to this contract, it is our understanding that your company provided insurance for Ft. James through [Fidelity]. I enclose a copy of the Certificate of Insurance related to that project which indicates that [Ft. James] and its subsidiaries are additional insureds under the automobile and general liability coverages issued to [Burkes].
 "Please consider this letter [Ft. James's] demand on your company and/or your insurers to defend and indemnify Ft. James in the above-referenced suit. We would request that you pass this letter on to your insurance agent and/or directly to the appropriate insurance company for this claim."
(Emphasis added.)
Burkes did not respond to the letter. Consequently, on February 23, 2001, Ft. James addressed a follow-up letter to Burkes; again Burkes did not respond. However, on March 7, 2001, Fidelity responded to the demand in a letter to counsel for Ft. James. In that letter, Fidelity denied coverage, citing Paragraph 2.c. of the endorsement (the bodily-injury exclusion) and Section IV.2. of the policy (the duty-to-notify provision).
On July 11, 2002, Ft. James filed a "third-party complaint" against Burkes and Fidelity. Count one of the complaint, as last amended, averred that Burkes had breached its contract with Ft. James to defend and indemnify Ft. James in the action. It sought a judgment against Burkes "for any and all costs and expenses incurred in defending the claims of [James], including reasonable attorney fees, as well as any liability [Ft. James might] incur, either by judgment, settlement, or otherwise." Count two averred that Fidelity had breached its contract with Ft. James "by failing to acknowledge coverage for indemnity of Ft. James as an additional insured and . . . [by failing] to tender a defense to Ft. James under [the] policy." Count three alleged that Fidelity had refused in "bad faith" to investigate its allegations that Burkes's "negligence proximately caused or contributed to [Jimmy James's] accident." The trial court severed Ft. James's claims against Fidelity, and that case was removed to the United States District Court for the Southern District of Alabama.
On August 18, 2003, Jimmy James settled his action against Ft. James for $875,000. On January 20, 2004, Ft. James's claims against Burkes were tried without a jury. At the close of all the evidence, Burkes filed a motion, styled "Motion for Judgment as a Matter of Law At the Close of the Third Party Plaintiff's Evidence." The trial court denied the motion and entered a judgment for Ft. James for "$989,963.19, representing the amount of the settlement, plus Ft. James' fees and expenses incurred in defending James' action." The judgment was based on explicit findings that, among other things, "Burkes received notice of the lawsuit by Jimmy *Page 910 
James against Ft. James and refused to defend the lawsuit or indemnify Ft. James against said claim." From that judgment, Burkes appeals.
Burkes raises two issues on appeal. First, it argues that Ft. James's claims that Burkes breached the provision of its contract requiring it to defend and indemnify Ft. James are barred by the statute of limitations. Second, it contends that Ft. James is "barred from bringing this action," because of "its unreasonable delay in submitting its claim." Burkes's brief, at 13-14. Burkes asks this Court to "reverse the trial court's order . . . and render a verdict in favor of [Burkes]."
 I. Standard of Review
By the two issues it raises in this appeal, Burkes essentially challenges the trial court's denial of the motion it filed at the close of all the evidence. That motion purported to be a "motion for a judgment as a matter of law," filed pursuant to Ala. R. Civ. P. 50(a) ("a JML motion"). However, the motion was not, in fact, a JML motion, because this action was tried without a jury. "In actuality, [Burkes's] motion was a motion for a judgment on partial findings by the trial court, pursuant to Rule 52(c), Ala. R. Civ. P.," as amended October 1, 1995. Loggins v. Robinson,738 So.2d 1268, 1270 (Ala.Civ.App. 1999). The 1995 amendment to Rule 52(c) "incorporated a recent amendment and a proposed amendment to [Fed.R.Civ.P. 52(c) (`Federal Rule 52')];" Rule 52, Committee Comments to October 1, 1995, Amendment. "This rule `supplanted, in nonjury trials, the "involuntary dismissal" procedure set forth in [former] Rule 41(b), Ala. R. Civ. P.'"Loggins, 738 So.2d at 1271 (quoting Hinson v. Holt,776 So.2d 804, 808 n. 2 (Ala.Civ.App. 1998)). In other words, Rule 52(c) "effects a transfer from former Ala. R. Civ. P. 41(b) of the vehicle for obtaining a judgment for failure of proof in a nonjury case." Rule 52, Committee Comments to October 1, 1995, Amendment.
The standard of review applicable to rulings on motions for involuntary dismissal is "equally applicable" to rulings on motions for a judgment on partial findings by the trial court.Loggins, 738 So.2d at 1271. See also Grant v. Bullock CountyBd. of Educ., 895 F.Supp. 1506, 1508-09 (M.D.Ala. 1995) (review under Federal Rule 52). Ordinarily, that standard is the oretenus standard. Loggins, 738 So.2d at 1271. However, the oretenus standard is inapplicable "where the evidence is undisputed, or where the material facts are established by the undisputed evidence." Salter v. Hamiter, 887 So.2d 230, 234
(Ala. 2004). Although evidence was presented ore tenus in this case, the trial court's findings as to the issues on appeal are based on facts that are not in dispute. Thus, the ore tenus
standard of review is inapplicable, and our review is de novo.
With these principles in view, we first address Burkes's statute-of-limitations argument.
 II. Statute of Limitations
Burkes first argues that this case is controlled by Ala. Code 1975, §§ 6-5-220 to -228, applicable to civil actions against, among others, "builders who constructed, or performed or managed the construction of, an improvement on or to real property designed by and constructed under the supervision, administration, or observation of an architect or engineer." §6-5-221(a) (emphasis added). Section 6-5-221(a) provides that all such actions must be commenced within two years of the accrual of the cause of action. A cause of action accrues "at the time the damage or injury is or in the exercise of reasonable diligence should have been first discovered," and so accrues "whether or not the full amount of *Page 911 
damages is apparent at the time of the first injury or damage." §6-5-220(e).
Burkes contends that Ft. James incurred its "first injury or damage," namely, legal expenses, in May 1999, when it hired its own counsel to respond to Jimmy James's complaint. Thus, Burkes argues, Ft. James's complaint, which was filed on July 11, 2002, was filed outside the two-year limitations period. It is undisputed that if § 6-5-221(a) does not apply, then the claims are not barred by any limitations period.
Ft. James contends that Burkes has presented no proof that Burkes satisfies the statutory definition of a "builder," and, consequently, Burkes cannot rely on the limitations period of §6-5-221(a). We agree with Ft. James.
Section 6-5-220(a) defines a builder as "[a]ny individual, partnership, firm, or corporation that constructed, or performed or managed the construction of, an improvement, or any portion thereof, on or to real estate, and [which] at the time of the construction was licensed as a general contractor in the State of Alabama." (Emphasis added.) "A party claiming the benefits of a statute has the burden of establishing a sufficient factual basis to support invocation of the statute." Wood v. Krenz,392 N.W.2d 395, 397 (N.D. 1986); see also Geiger Co. v. Hussey,63 Ala. 338, 342 (1879) ("whoever claims the benefits of [a] statute must bring himself within its provisions — must show affirmatively that he is of the class of persons, and has a [right] of the kind the statute intends to secure").
In reply to Ft. James's contention that Burkes has presented no proof that it satisfies the definition of a "builder" at §6-5-220(a), Burkes states: "Of course, Burkes Mechanical is a licensed Alabama general contractor, so this argument is incorrect." Reply brief, at 10 (emphasis added). However, the "briefs of counsel, with the statements of their contentions, [are] not evidence in the case." Fleming v. Copeland,210 Ala. 389, 391, 98 So. 128, 129 (1923). "This Court is limited to a review of the record, and the record cannot be changed, altered or varied on appeal by statements in briefs of counsel."Wal-Mart Stores, Inc. v. Goodman, 789 So.2d 166, 176 (Ala. 2000). The record contains no evidence of Burkes's status. Because Burkes has failed to satisfy its burden of showing it is entitled to the benefit of § 6-5-221(a), we hold that the claims of Ft. James are not barred by that statute of limitations.
 III. Timely Notice
Burkes next contends that "Ft. James's twenty-month delay in seeking defense and indemnity and three-year delay in filing its third-party complaint against Burkes precludes recovery." Burkes's brief, at 23. Again, we disagree.
To be sure, in order to preserve an indemnity claim, the indemnitee must timely notify the indemnitor of the action against the indemnitee. However, "timely notice" is a relative term, that is, it depends on the facts and circumstances of each case. Cochrane Roofing Metal Co. v. Callahan, 472 So.2d 1005,1008 (Ala. 1985). "`The notice must be timely in that it must not come so late that the indemnitor is prejudiced in preparing the defense. . . .'" Stone Building Co. v. Star Elec. Contractors,Inc., 796 So.2d 1076, 1091 (Ala. 2000) (quoting Restatement(Second) of Judgments § 57, cmt. e). "Conversely, tardinesswithout prejudice provides no defense." 796 So.2d at 1091
(emphasis added). Ft. James correctly contends that Burkes has failed to show how it was prejudiced, and, consequently, *Page 912 
that Burkes has no defense to Ft. James's indemnity claim.
Burkes contends that it was prejudiced, but does so solely on the basis of Fidelity's denial of coverage. Specifically, Burkes states:
 "Had Ft. James made a timely demand upon Burkes and/or [Fidelity], Burkes would have notified [Fidelity] of Ft. James's demand for defense and indemnity under the contract and [Fidelity] would have known of the Ft. James claim and that Ft. James was an additional insured under the insurance policy and potentially entitled to coverage. Therefore, the very damages sought by Ft. James in its third-party complaint — the costs of defending the James litigation and of settling the case (or satisfying a judgment against Ft. James) — would have been covered and paid for under Burkes's policy with [Fidelity] had Ft. James only acted responsibly and notified Burkes and [Fidelity] in a timely manner. Unfortunately, Burkes was not timely notified of Ft. James's demand for defense and indemnity and [Fidelity] was not timely notified of the James complaint against Ft. James until almost two years after Ft. James received the summons and complaint. As a result of Ft. James's unilateral, unreasonable and unjustified delay, [Fidelity] invoked the lack of timely notice as a defense to Ft. James's request for coverage. . . . .
 "Had Burkes been timely notified of Ft. James's demand for defense and indemnity, [Fidelity] would have been timely notified as well and would have been precluded from raising a late notice defense. . . . Instead of Burkes looking at $1,000,000.00 of exposure, that exposure would have been assumed by [Fidelity] as Ft. James had envisioned when it drafted the contract and demanded that it be added as an additional insured under Burkes's commercial general liability policy."
Burkes's brief, at 26-27 (emphasis added). For a number of reasons, this argument is without merit.
First, it must be noted that Burkes does not contend that it lacked timely notice of the underlying action, that is, the claims of Jimmy James against Ft. James. Burkes states only that it lacked a timely notice of the "demand for defense andindemnity." In that connection, Ft. James states that "[o]n August 5, 1999, approximately three months after the filing of the complaint in the underlying action, Burkes intervened in the lawsuit and has been a party to the underlying action ever since. Burkes received, or could have received, a copy of the complaint at the time of the intervention." Ft. James's brief, at 30.
In response, Burkes contends that "[t]his intervention was only in the name of [Burkes], and was actually done by [Burkes's] worker's compensation carrier, not Burkes itself, which had no stake in the intervention." Reply brief, at 2 (emphasis added). Even assuming that this assertion is true, it appears to be a distinction without a difference, especially in view of the fact that Burkes does not deny timely notice of the underlying action. Burkes offers no explanation.
The second weakness in Burkes's argument is found in the policy itself. Although Burkes's policy with Fidelity listed Ft. James as an "additional insured," the "named insured" was Burkes. The policy defined the duties owed to Fidelity "in the event of an occurrence, offense, claim, or suit." "Occurrence" was defined in Section V of the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."
Under the policy, Burkes — as well as Ft. James — was to "see to it that [Fidelity *Page 913 
was] notified as soon as practicable of an `occurrence' or an offense which [might] result in a claim." In the event of a "claim" or a "suit" against either Burkes or Ft. James, Burkes — as well as Ft. James — was to "see to it that [Fidelity] receive[d] written notice of the claim or `suit' as soon as practicable." Burkes — as well as Ft. James — was to "send [Fidelity] copies of any demands, notices, summonses or legal papers received in connection with the claim or `suit.'" In other words, the policy cast the burden of compliance with the notice provisions equally upon Burkes and Ft. James.
There is no evidence or contention that anyone notified Fidelity of the "occurrence" on July 8, 1997, in which Jimmy James slipped and fell at the mill. In a summary-judgment motion it filed on January 13, 2003, Fidelity stated: "The firstnotification received by Fidelity of this `occurrence' occurred on January 22, 2001, when it received the correspondence from [Ft. James's counsel] dated January 17, 2001. This was a delay in notification of the `occurrence' of three years and six months." (Emphasis added.) If, as Burkes alleges, Ft. James breached its duties as an additional insured to notify Fidelity of Jimmy James's action against Ft. James, Burkes, as the named insured, breached the policy in failing to notify Fidelity of the underlying accident.
It appears that had either Burkes or Ft. James timely notified Fidelity of Jimmy James's accident, Fidelity would have had no ground for the defense on which Burkes's prejudice argument is based. Moreover, as Ft. James correctly contends, Burkes's duty to indemnify Ft. James does not turn on the validity of Fidelity's lack-of-notice defense. Paragraph 11 of the contract states that Burkes's "obligations to defend, indemnify and hold [Ft. James] harmless . . . shall not be limited or otherwise affected by any insurance which [Burkes] may carry under Paragraph 10 above or otherwise or by any insurance which [Ft. James] may carry." Unlike the policy, the contract contains no timely-notice requirement. Burkes may not assert the consequences of its own default under the policy as the basis for the prejudice it now alleges as grounds for avoiding the contract's indemnity provisions.
Because Burkes knew of Jimmy James's injury and his consequent action against Ft. James, this case differs fromCochrane Roofing Metal Co. v. Callahan, supra, cited by Burkes.
 "In Cochrane, unlike in the case before us, the indemnitor, a roofing subcontractor, pleaded and proved without contradiction that, because of the delay of the indemnitee, the general contractor, in notifying the indemnitor of the suit for defective roofing, `the roof, the subject of the suit, had been recovered by another contractor, preventing the subcontractor [the indemnitor] from investigating the problem.'"
Stone Building Co., 796 So.2d at 1091 (discussing and distinguishing Cochrane).
In this case, Burkes was fully and timely apprised of the basis of the underlying claim, namely, the injury to Jimmy James. James slipped and fell while performing his duties as Burkes's employee and immediately filed a written report of the accident. The facts and circumstances of the fall were necessarily involved in James's worker's-compensation action against Burkes, which was fully and finally litigated. Those facts formed the basis of Jimmy James's claim against Ft. James and of the indemnity claim against Burkes. Consequently, Burkes cannot show that its ability to investigate and determine the basis of the underlying claim was impaired.
In short, we find no merit in Burke's contention that Ft. James failed to preserve *Page 914 
its contractual right to indemnity. Because Burkes has presented no ground on which to reverse the judgment of the trial court, that judgment is affirmed.
AFFIRMED.
HOUSTON, LYONS, BROWN, JOHNSTONE, HARWOOD, and STUART, JJ., concur.
NABERS, C.J., and SEE, J., concur in the result.