The law firm of Jones, Morrison, Womack Dearing, P.C., an Atlanta, Georgia, law firm; the law firm of Stokes, Clinton, Fleming Sherling, and its successor firm, Stokes Clinton, P.C., a Mobile law firm; and Paul Clinton, a partner in Stokes, Clinton, Fleming 
Sherling and Stokes Clinton, P.C., separately petitioned this Court for certiorari review of the Court of Civil Appeals' holding that SouthTrust Bank's appeal of a summary judgment in their favor would not be dismissed as moot. We granted the writ of certiorari initially to address the petitioners' argument that the Court of Civil Appeals' decision conflicts with Allstate Insurance Co. v.Amerisure Insurance Cos., 603 So.2d 961 (Ala. 1992) ("Amerisure II"). We find that this case is distinguishable from Amerisure II; therefore, we quash the writ as having been improvidently granted.
 Facts and Procedural History
SouthTrust, represented by the law firm of Jones, Morrison, Womack Dearing, P.C.; by the law firm of Stokes, Clinton, Fleming Sherling, and its successor firm, Stokes Clinton, P.C.; and by Paul Clinton, obtained a judgment against Neal Greene and took certain actions to collect that judgment; those actions resulted in economic harm to Greene. Because Greene was not legally liable for the debt that gave rise to SouthTrust's collection action, the judgment against him was set aside,[1] and Greene sued SouthTrust, alleging malicious prosecution.[2]
SouthTrust brought a third-party complaint against the law firms and the lawyer that had represented SouthTrust in the collection proceeding — the law firms of Jones, Morrison, Womack Dearing, P.C., and Stokes, Clinton, Fleming Sherling, and its successor firm, Stokes 
Clinton, P.C., and the lawyer Paul Clinton (hereinafter sometimes referred to collectively as "the lawyers") — seeking indemnity for any liability SouthTrust might have to Greene arising out of the malicious-prosecution action. The lawyers moved for a summary judgment, arguing that SouthTrust, as a joint tortfeasor, was not entitled to indemnity from them. On September 25, 2003, the trial court entered a summary judgment in favor of the lawyers.
At the time the summary judgment for the lawyers was entered, the malicious-prosecution case had been scheduled for mediation to begin on October 1, 2003. The lawyers notified the mediator that they would not attend the mediation. The mediation went forward without the lawyers' participation, and without success.
Greene's malicious-prosecution case was scheduled for trial, which was to begin on October 27, 2003. On October 24, 2003, SouthTrust settled Greene's claim for $325,000. On November 13, 2003, Greene and SouthTrust filed a "stipulation of dismissal" of Greene's action against SouthTrust. On the same day, by notation on the case-action summary, the trial court dismissed the case. SouthTrust thereafter sought two-thirds of the settlement amount from the lawyers, but the lawyers refused to pay. On December 4, 2003, SouthTrust filed in the Court of Civil Appeals its notice of appeal from the trial *Page 914 
court's summary judgment in favor of the lawyers on the indemnity issue.
The lawyers moved the Court of Civil Appeals to dismiss SouthTrust's appeal, arguing that, by settling with Greene, SouthTrust had lost any rights it might have had to seek indemnity from the lawyers; thus, they argued, SouthTrust had effectively mooted its appeal. In support of that argument, the lawyers cited Amensure II. The Court of Civil Appeals denied the lawyers' motion to dismiss and decided the substantive issues raised by SouthTrust on appeal. The Court of Civil Appeals reversed the summary judgment in favor of the lawyers and remanded the case to the trial court for further proceedings. The lawyers filed two petitions in this Court for a writ of certiorari, asserting several grounds for review. We granted certiorari review to consider only the issue whether the decision of the Court of Civil Appeals conflicts withAmerisure II.[3] We consolidated the two petitions for the purpose of issuing one opinion.
 Analysis
In addressing the lawyers' motions to dismiss SouthTrust's appeal, the Court of Civil Appeals distinguished AmerisureII on the basis that Amerisure II is a subrogation case, not an indemnity case, and because, it concluded, the notice that was lacking in AmerisureII is not lacking in this case. As the Court of Civil Appeals noted, this Court in Amerisure II alternately used the terms "indemnity," "equitable subrogation," and "reimbursement" to describe the basis for Amerisure's counterclaim against Allstate. `We also note that this Court indicated that its holding in Amerisure II that the claim had not been preserved would have remained the same whether the claim for reimbursement — to use the more general term — was based on a claim for indemnity or on one of subrogation. 603 So.2d at 966. However, we do not find it necessary to distinguish Amerisure II on the ostensible basis that its holding depends on its being a subrogation case as opposed to an indemnity case.
The alternative basis on which the Court of Civil Appeals distinguished Amerisure II from the case before us is that the notice that was lacking in Amerisure II is not lacking in this case. The court wrote:
 "Amerisure II does not apply to the situation between [SouthTrust] and the lawyers in this case for a second reason: . . . it is clear that the court considered it pivotal that Amerisure had failed to notify Allstate that it intended to look to Allstate for recoupment of what it had paid in settlement. The court stated, `The record is devoid of any notice that Amerisure intended to pursue a claim for reimbursement against Allstate.' Amerisure II, 603 So.2d at 966 (emphasis added). In the present case, there is simply no basis for arguing that the lawyers were unaware that [SouthTrust] was seeking indemnity from them for any liability it might have to Greene.
 "On August 28, 2001, counsel for [SouthTrust] wrote the following letter to [Stokes, Clinton, Fleming Sherling] clearly notifying the lawyers in that firm that it considered them `ultimate[ly] responsib[le]' for any liability [SouthTrust] had to Greene[.]
 "`. . . .' *Page 915 
 "In addition, [SouthTrust] filed a motion in April 2002 for a mediation allowing the lawyers to participate in Greene's action against [SouthTrust] without being named as third-party defendants. Finally, on May 31, 2002, [SouthTrust] filed a third-party complaint against the lawyers, alleging claims under the [Alabama Legal Services Liability Act] and seeking indemnity for any liability that [SouthTrust] might have to Greene."
SouthTrust Bank v. Jones, Morrison, Womack Bearing, P.C., 939 So.2d 885, 895 (Ala.Civ.App. 2005). Thus, the Court of Civil Appeals held that "AmerisureII is not authority for precluding [SouthTrust] from pursuing its third-party claims against the lawyers," and it denied the lawyers' motions to dismiss the appeal as moot and reversed the summary judgment. Id,
We recently reiterated that an indemnitee must give timely notice to the indemnitor in order to preserve an indemnity claim. See Burkes Meek, Inc. v. Ft. James-Pennington,Inc., 908 So.2d 905 (Ala. 2004). "To be sure, in order to preserve an indemnity claim, the indemnitee must timely notify the indemnitor of the action against the indemnitee."Burkes Meek, 908 So.2d at 911. We continued, however, that "`timely notice' is a relative term, that is, it depends on the facts and circumstances of each case." 908 So.2d at 911
(citing Cochrane Roofing Metal Co. v. Callahan,472 So.2d 1005, 1008 (Ala. 1985)). "`"The notice must be timely in that it must not come so late that the indemnitor isprejudiced in preparing the defense."'" BurkesMeek, 908 So.2d at 911 (quoting Stone Building Co. v.Star Elec. Contractors, Inc., 796 So.2d 1076, 1091
(Ala. 2000), quoting in turn Restatement (Second) ofJudgments § 57, cmt. e). "`Conversely, tardinesswithout prejudice provides no defense.'" BurkesMeek, 908 So.2d at 911 (quoting Stone,796 So.2d at 1091).
Given the facts and circumstances of this case, we agree with the Court of Civil Appeals that this case is not likeAmerisure II and that this Court's holding inAmerisure II does not preclude SouthTrust from pursuing its third-party indemnity claim against the lawyers. We cannot agree with the lawyers' contention that they were deprived of notice of SouthTrust's intention to seek indemnity from them, as the Court concluded Allstate had been deprived in Amerisure II)[4] The proceedings leading up to SouthTrust's settlement with Greene of his malicious-prosecution action and the procedural posture at the time Greene and SouthTrust entered into the settlement agreement differ significantly from those in AmerisureII.
In Amerisure Insurance Cos. v. Allstate InsuranceCo., 582 So.2d 1100 (Ala. 1991) ("Amerisure I"), Morris Sherrill, an employee of Wadsworth Contractors, Inc., was involved in an accident in which one of Wadsworth's trailers, which was attached to Sherrill's personal truck, came un *Page 916 
hitched and rolled into a vehicle being driven by Fred Demo. Sherrill was insured by Allstate Insurance Company. Allstate paid Demo for the property damage he sustained as a result of the accident. Demo then sued Wadsworth and Sherrill seeking damages for his personal injuries.
Allstate brought a separate action against Wadsworth's insurer, Amerisure Insurance Companies, seeking a judgment declaring that it had no obligation to defend or to indemnify Sherrill in Demo's personal-injury action. Amerisure answered the complaint, admitting that it had primary coverage for Wadsworth. The trial court entered a summary judgment in favor of Allstate, holding that "Allstate owed no coverage to Sherrill with regard to this accident." 582 So.2d at 1101. Amerisure appealed.
On May 30, 1991, while the Amerisure I appeal was pending (that is, Amerisure's appeal of the judgment declaring that Allstate owed no coverage to Sherrill for the accident), Amerisure settled Demo's personal-injury action against Wadsworth and Sherrill. Amerisure gave notice to Allstate of the proposed settlement, but did not give any indication that it would seek to hold Allstate liable for the settlement amount.
On June 21, 1991, this Court released its opinion inAmerisure I, holding that Sherrill's policy with Allstate covered the trailer. That is, the Court reversed the summary judgment in favor of Allstate. 582 So.2d 1102. The Court did not determine whether Allstate's or Amerisure's policy provided the primary coverage for the accident.
On remand to the trial court, Amerisure filed a counterclaim against Allstate seeking reimbursement for the amount it had paid Demo in settlement of his claims against Sherrill, arguing that Allstate was legally obligated to pay Sherrill's obligation to Demo. The trial court entered a summary judgment in favor of Amerisure, and Allstate appealed. AmerisureII, 603 So.2d at 963. This Court reversed the summary judgment in favor of Amerisure, stating:
 "Even assuming that the circumstances and the relations of the parties could give rise to an implied contract of indemnification between Allstate and Amerisure after this Court's holding in [Amerisure I ], no such implied contract could have existed at the time of the settlement and before this Court's reversal. At the time Amerisure informed Allstate of the proposed settlement, Allstate was not an indemnitor, but, rather, Allstate had a declaratory judgment from the trial court holding that it was not obligated to provide coverage. Amerisure's pending appeal sought a reversal of Allstate's declaratory judgment and a rendition of a judgment holding that Allstate's policy provided primary coverage applying before any coverage under Amerisure's policy."
Amerisure II, 603 So.2d at 964. The Court stated, without citing authority, that, if Amerisure wanted to "preserve its right to seek indemnification for the settlement in the event of a reversal of the declaratory judgment," it could have done so (1) by notifying Allstate that Amerisure intended to seek indemnification if this Court reversed the summary judgment on appeal, (2) by requesting a continuance of the trial of Demo's personal-injury action,[5] or (3) by requesting a stay of Demo's personal-injury action until this Court ruled on the summary judgment of the declaratory-judgment action. Id. *Page 917 
The Court further noted that Amerisure did not do anything wrong in settling Demo's personal-injury action. However, the Court said, again without citing authority, that "[t]he point is that Amerisure, in settling with Demo, did not preserve its right to proceed against Allstate either by giving Allstate notice of such an intent or by postponing the settlement until after this Court had ruled in its appeal from Allstate's declaratory judgment." Amerisure II,603 So.2d at 965.[6] The Court stated:
 "Amerisure's presentation of its settlement agreement to Allstate does not amount to reasonable notice of Amerisure's intent to proceed against Allstate for reimbursement and will not sustain the trial court's judgment. The record is devoid of any notice that Amerisure intended to pursue a claim for reimbursement against Allstate. Amerisure's settlement agreement included the release of Allstate's insured from all liability, but did not mention Amerisure's claim for reimbursement in the event that Allstate's declaratory judgment was reversed. It would be unjust, and possibly a violation of due process, to subject Allstate to the terms of a settlement to which it did not consent, at least not with any view toward its own liability, even if it implicitly consented on behalf of its insured."
Amerisure II, 603 So.2d at 966.
We do not agree with the lawyers in this case that they were deprived of notice that SouthTrust was seeking indemnity from them so that SouthTrust failed to preserve its indemnity claim, thus rendering its appeal moot. In AmerisureII, the declaratory-judgment action involving the liabilities of Amerisure and Allstate was a case separate from the underlying action giving rise to liability — Demo's personal-injury action. In that separate declaratory-judgment action, Amerisure did not at the outset bring an indemnity claim against Allstate. Only after the case had proceeded to final judgment in favor of Allstate, after Amerisure had settled Demo's personal-injury case, and after Amerisure had appealed and obtained a reversal of that judgment, did Amerisure assert a counter-claim against Allstate for indemnity. In addition, Allstate was not a party in Demo's personal-injury suit.
In contrast, in the case before us, SouthTrust brought at the outset — and in Greene's action giving rise to the indemnity claim — a third-party complaint seeking indemnity from the lawyers. We cannot conclude that the lawyers were not on notice that SouthTrust would seek indemnity from them.
This Court apparently found it significant in AmerisureII that "Amerisure settled at a time when there was a declaratory judgment holding that Allstate's policy did not provide coverage for this accident" and therefore concluded that "Amerisure effectively mooted its appeal by settling as it did without attempting to preserve its right to proceed against Allstate on the settlement." 603 So.2d at 966.[7]
The lawyers argue that, in this case, SouthTrust settled at a time when there was a summary judgment holding that the lawyers *Page 918 
were not obligated to indemnify South-Trust and that they were entitled to rely on that judgment in declining to participate further in Greene's underlying action.[8]
However, the summary judgment in the lawyers' favor was not final at the time SouthTrust settled with Greene. Pursuant to Rule 54(b), Ala. R. Civ. P., in the absence of the trial court's proper certification of finality,
 "any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."
On October 24, 2003, when SouthTrust settled with Greene, the summary judgment in favor of the lawyers was subject to revision. No party had sought from the trial court a certification of finality under Rule 54(b), Ala. R. Civ. P. The summary judgment became final only when the case was finally disposed of on November 13, 2003. The declaratory judgment on which the Court focused in Amerisure II
was final at the time the settlement was reached; it disposed of the only claim in that action. See Rule 54(b), Ala. R. Civ. P. The lawyers' argument that they could rely on that judgment in declining to protect their interests by further participating in the case, for example, by attending the October 1, 2003, mediation, is unpersuasive.
For the foregoing reasons, we conclude that AmerisureII is distinguishable from the case before us. We agree with the Court of Civil Appeals that Amerisure II
does not dictate that when SouthTrust settled with Greene it lost or failed to pre-serve its indemnity claim against the lawyers. Thus, Amerisure II did not require the Court of Civil Appeals to dismiss SouthTrust's appeal. Finding no conflict with Amerisure II, we quash the writ as improvidently granted.
[1] The underlying facts are not pertinent here and are set out fully in the Court of Civil Appeals' opinion. SouthTrust Bank v.Jones, Morrison, Womack Dearing, P.C., [Ms. 2030272, March 18, 2005] ___ So. 2d ___ (Ala.Civ.App. 2005).
[2] Greene also alleged negligence and wantonness, abuse of process, and the tort of outrage; however, the trial court entered a summary judgment in favor of SouthTrust on those claims.
[3] We do not review the Court of Civil Appeals' ultimate holding that the trial court erred in entering a summary judgment in favor of the lawyers. Our determination of the Amerisure II
question is material, however, because if Amerisure II were applicable and if SouthTrust failed to take measures necessary under that decision to preserve its indemnity claim, thereby rendering its appeal "moot," the Court of Civil Appeals should have dismissed SouthTrust's appeal instead of deciding it on the merits.
[4] Amerisure II has never been cited as authority for precluding a would-be indemnitee from recovering from an indemnitor as the lawyers would have it operate in this case. The holding in Amerisure II that Amerisure "effectively mooted" its appeal by settling without "preserving" its reimbursement claim against Allstate has been discussed only by the United States District Court for the Middle District of Alabama, in AllstateInsurance Co. v. Brantley, 867 F. Supp. 1004, 1009 (M.D. Ala. 1994). That court distinguished Amerisure II from the case before it on the basis that the relationship between Amerisure and Allstate differed from the relationship between the parties before the federal district court. ("Thus, while the [Alabama] Supreme Court's holding in [Amerisure II] is altogether correct given the relationship of the parties in that case, that holding has no application to the present case and is not authority upon which to deny Unisun's claim for subrogation.")
[5] Amerisure argued that it had entered into the settlement agreement on May 30 because of the pending June 12 trial date.Amerisure II, 603 So. 2d at 964.
[6] The cases the Court cited in Amerisure II that address the requirement of notice before settlement are cases involving uninsured-motorist coverage. While the Court noted that such cases were different from Amerisure II, it noted that those cases illustrate, among other things, "the importance of an insurance company's right to participate in the underlying action." 603 So. 2d at 966. The lawyers offer no authority for the proposition that Amerisure II should have force outside of that context.
[7] The Court cited no authority in support of this proposition.
[8] While arguing that they were entitled to rely on the summary judgment, the lawyers also argue that, despite that summary judgment, because SouthTrust did not give them advance notice of the settlement SouthTrust failed to preserve its indemnity claim. Amerisure did not bring its indemnity claim until after it had settled with Demo; SouthTrust brought its claim for indemnity early in the litigation between Greene and SouthTrust.
WRIT QUASHED.
LYONS, HARWOOD, WOODALL, STUART, SMITH, and BOLIN, JJ., concur.
PARKER, J., concurs in the result.