465 So.2d 860 (1985)
Daniel Ray BRENTS, et ux., Plaintiffs-Appellants,
v.
GULF INSURANCE COMPANY, et al., Defendant-Appellee.
No. 16778-CA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 1985.
Rehearing Denied March 27, 1985.
Writ Denied May 31, 1985.
*861 Pringle & Herzog by Troy E. Bain, Shreveport, for plaintiffs-appellants.
Office of the Atty. Gen. by William M. Cady, Shreveport, for defendant-appellee.
Before HALL and SEXTON, JJ., and PRICE, J. Pro Tem.
PRICE, Judge Pro Tem.
Plaintiffs, Daniel Ray Brents and Mary Elizabeth Wilde Brents, appeal the judgment of the trial court in favor of defendant, the State of Louisiana, in their action for damages arising from the wrongful death of their infant son, Christopher Clayton Brents.[1] We affirm the judgment of the trial court for the following reasons.
Plaintiff, Daniel Brents, was the caretaker of the cemetery located in Vivian, Louisiana and the Brents family lived in a home provided for them adjacent to the cemetery grounds.
On March 15, 1981, the Brents family was in the dining room of their home visiting with relatives. Plaintiff and his brother, Donny Brents, briefly stepped outside to the cemetery grounds and were gone for approximately five to ten minutes. Upon their return at approximately 5:00 p.m., it was discovered that Christopher was missing. Daniel Brents had thought that Christopher had remained inside with his mother, whereas Mary Brents believed that Christopher had accompanied the men outside. Christopher was born on May 17, 1979 and at the time of his disappearance, was about 22 months old.
The family immediately began to search for Christopher but could not find the child in the vicinity of the house. The police were notified shortly thereafter to assist in the search.
An intensive search, including the use of helicopters, dogs, and numerous volunteers, commenced immediately. The search continued late into the night and then resumed again early the next morning. At one point, it was feared that Christopher may have been abducted. Late in the afternoon on March 16, 1981, Christopher's body was discovered in an abandoned water well located near the Brents home on the cemetery grounds. It was later determined that drowning was the cause of death.
On April 14, 1981, plaintiffs filed the instant action naming as defendants the Town of Vivian, the town's insurer, Gulf Insurance Company, and the State of Louisiana. Plaintiffs alleged that the defendants were liable for the death of their son in having an unmarked and open well on the property, in failing to properly plug or cover the well and in failing to properly warn or apprise persons of the dangerous condition of the property.
A trial on the merits was held on March 5, 1984. The action against Gulf Insurance Company was tried before a jury and the action against the Town of Vivian and the State of Louisiana was tried before a judge pursuant to LSA-R.S. 13:5105 which prohibits trial by jury when a governmental body is a party.
At the trial, the parties presented numerous witnesses. It was established that by Resolution, dated May 2, 1967, the Town of Vivian requested the Department of Public Works of the State of Louisiana to drill water wells for the purpose of locating a potable water supply for the town. The resolution provided that the Department of Public Works would prepare the plans and specifications, furnish the engineering supervision, and award a contract in its own name and at its own expense.
On June 2, 1967, the Department of Public Works entered into a contract designated as Contract No. 5856, with Brooks and Prator Drilling Co., Inc., d/b/a Edington Drilling Company (hereinafter referred to *862 as Brooks and Prator). The contract provided that Brooks and Prator would perform the drilling and testing of two or more water test holes at sites near the Town of Vivian to be designated by the Department of Public Works. The contract further provided that the drilling, logging, and testing would be done under the direct supervision of the Department of Public Works and in strict accordance with the specifications, designated as File No. M-2087-L, prepared by the department. The specifications were made a part of the contract by reference.
Freddie Lindy, an employee of the Office of Public Works, Department of Transportation and Development, testified that his position in connection with the drilling of the well was primarily one of inspection, that is to ensure that the job contractor had met and complied with the plans and specifications for the project as well as assisting in the site selection. Lindy testified that he had total control of the drilling of the well and was at the site at all times when the test hole was being drilled. The well in the instant case was identified as Vivian Number 1 or U.S. Geological Number 443 and was located adjacent to the cemetery property, specifically the northeast quarter of the northeast quarter of the northwest quarter Section 26, Township 22 North, Range 16 West. Lindy testified that the contractor was required to follow the specifications prepared by the department and a representative of the department was required to be present at all times. Lindy testified that the specifications also set out the method by which the contractor was to fill the hole if the hole was abandoned. The substance which was to be used to fill the test hole was puddled clay.
Lindy testified the drilling of the well commenced on June 23, 1967 and was completed around June 27, 1967. For the drilling, a six and quarter inch bit was used. Lindy explained that the drill cuttings or the material removed in the process of drilling was the material which was termed as puddled clay. The well was drilled to a depth of 504 feet. Lindy testified that the electrical log revealed that basically the materials in the hole were a mixture of sand and clay. As a result of the log, it was decided not to complete the well as there was nothing to indicate it would be a "good" hole.
Lindy testified that in order to fill the hole, the drilling fluid, which is basically a mixture of mud and water, in the hole would have been conditioned to a point where it would accept the puddled clay. The puddled clay would be poured in slowly from the top until the hole was filled. Lindy testified that the material used to fill the hole was predominantly the same which was removed from the hole, approximately 85% clay and 15% sand.
When questioned about the term bridging in connection with the drilling of a test hole, Lindy testified it is basically a process in which material wedges against each other in a hole and actually bridges the opening, leaving a void below. Bridging may occur when the material used to fill the hole is replaced too quickly. With regard to the test hole in the instant case, Lindy testified that there was no indication that bridging had occurred, such as having a sizable amount of material remaining after filling the hole. Lindy testified that he, to the best of his ability, had made certain that the specifications had been followed in filling the hole before giving his approval.[2]
Lindy further testified that the diameter or size of the hole at the surface after drilling was completed would be approximately six and a quarter inches, the same diameter of the drilling bit, provided there had been no disturbance.
Jack Farnell, an employee of the Town of Vivian, testified that in approximately 1974 or 1975, he filled a hole behind the house on the cemetery grounds. Farnell stated that he and another employee, Dan Logan, got a truckload of sand or dirt, approximately six yards. Logan used the bucket *863 of a backhoe to impact the material down in the hole as tight as possible. Farnell described the hole as deep, without any casing and estimated the diameter of the top of the hole as being from eight to twelve inches. Farnell testified that in filling the hole, they had used the entire truckload, leaving the excess dirt piled on top of the hole. Farnell testified that the hole in which the Brents child was found was in the same location as the one he had helped to fill and he was sure it was the same one.
Dan Logan, an employee of the Town of Vivian, testified that he had filled a hole with a backhoe, leaving a mound of dirt in case there was any settling. Logan testified that he believed the hole he filled was the same one in which the child died. Logan stated that the diameter across the hole was about 20 inches and he could not see the bottom when looking down in it.
The Mayor of Vivian, James Williamson, testified he was a town alderman at the time when the resolution with Department of Public Works was passed. Williamson stated that Vivian was in need of water at that time. Williamson testified that prior to the disappearance of the Brents child, he had no knowledge of any holes in that area or that the hole had been filled by town employees.
Fred Brown, Water Superintendent of Vivian, testified that he dealt with general maintenance problems as part of his duties. Brown testified that the purpose of drilling the test holes was to relieve a water shortage. Brown testified he assisted Lindy in locating the drilling site on the cemetery property. Brown stated the test hole was in the same vicinity as the hole in which the child died but that he did not remember any maintenance crew filling a test hole before the child's death. Brown testified that he did not observe any casing in the hole in which the child fell and that this hole was located in an area of the cemetery in which the grass was closely mowed.
Donald Bruce, a Deputy of the Caddo Parish Sheriff's Department and participant in the search, testified he first looked into the hole a couple of hours before the child was eventually found but did not observe anything. Later, using a flashlight to more closely examine the hole, there appeared to be some type of clothing and hooks were sent for in order to search the hole. Bruce testified that the child was removed from the hole by using the hooks and that the top of the hole had to be enlarged to extract the child.
In describing the hole, Bruce testified it was located behind the Brents home, just outside the fenced-in back yard. Bruce estimated the hole to be approximately nine inches in diameter at the top but larger towards the bottom with grass surrounding it. Bruce testified it was approximately twenty-five to thirty-feet from the top of the hole to the surface of the water. Bruce stated he observed lumber and other debris in the hole, but no casing. Bruce testified that the hole appeared to be a dug, rather than drilled, type of well.
Donny Smith, a Deputy of the Caddo Parish Sheriff's Department, testified that he participated in the search for the Brents child including diving in creeks around the Vivian area and assisting in the removal of the child from the hole. In examining the hole, Smith testified that debris and what appeared to be clothing could be observed. Smith estimated that the diameter of the top of the hole was approximately a foot to a foot and a half and that the hole appeared to be the same width all the way down.
Berky Brents, the father of Daniel Brents, testified he examined the hole in searching for the child. Brents estimated the diameter of the top of the hole to be twelve to fourteen inches and that the hole appeared to be larger at the top than it was at the bottom.
Plaintiff, Daniel Brents, testified that he became the caretaker of the cemetery in December, 1978, and his duties consisted of general maintenance, such as mowing the grass. Brents testified that although he had mowed the area in which the hole was located, he had never observed the hole.
*864 Benny Springer, a resident of Vivian, testified he lived quite near the cemetery and had observed the drilling of the well. Springer testified that there was casing in the well and he had previously placed an old paint can over the hole because it could not be seen.
At the close of plaintiffs' evidence, defendant, the State of Louisiana, made a motion for dismissal which was granted by the court. The court found the preponderance of the evidence was that the hole in which the Brents child fell was the same hole which was drilled in 1967. The court held that the evidence at trial established the hole was properly filled in accordance with generally accepted standards even though 15% sand was used in the filling.
The jury later returned a verdict in favor of plaintiffs against Gulf Insurance Company and the court rendered judgment finding the Town of Vivian liable.
Pursuant to stipulation by the parties, defendant, the State of Louisiana, presented its evidence in special proceedings held on April 19, 1984, in order to complete the record.
Jack Hutchinson, a former employee with Edington Drilling Company (Brooks and Prator), testified that he had drilled a test well in Vivian. Hutchinson testified that the hole which was drilled was not in the same hole in which the child fell. Hutchinson assisted in filling the drilled hole and stated it was filled only with the cuttings which had come out of the hole. Hutchinson testified a cement plug was used at the top of the hole although this was contradicted by other witnesses.
Anthony Deviellier, a representative of the U.S. Geological Survey, testified he was at the site when the hole was originally drilled. Using a sketch previously made by him in 1968 depicting the location of the well, Deviellier testified the test hole and the hole pointed out to him as the one in which the child fell were in different locations, approximately fifty feet apart. After the accident, Deviellier testified an attempt to locate the test well was made using a bulldozer but was unsuccessful, only a depressed area was found which could have possibly been the test hole or the mud pit.
Freddy Lindy again testified as to the filling of the hole. Lindy stated that sand was an excellent fill material and the small amount of sand used to fill the test hole in the instant case would not create any problems. Lindy testified that one problem associated with the use of sand as a fill material is contamination of aquifers and if this was not a concern, sand would be a better fill material than clay.
In a written opinion dated April 19, 1984, the court maintained its previous ruling on the defendant's, State of Louisiana, motion to dismiss after hearing the defendant's evidence.
On appeal, it appears that the only issue before this court is whether the trial court erred in finding that the defendant, State of Louisiana, was not negligent in the filling and abandonment of the test hole.
It is well-settled that an "... appellate court cannot disturb the trial judge's reasonable evaluations of credibility and reasonable inferences of fact..... The trial judge's findings as to the credibility of witnesses and his findings of fact cannot be disturbed unless clearly wrong." Wilson v. Jacobs, 438 So.2d 1119 (La.App. 2d Cir.1983) at p. 1121, writ denied 443 So.2d 586 (La.1983), and numerous citations therein. The "... reviewing court must give great weight to the conclusions of the trier of fact, and should not disturb reasonable evaluations of credibility and reasonable inferences of fact, even though other evaluations and inferences are as reasonable." Aleman v. Lionel F. Favret Co., Inc., 349 So.2d 262 (La.1977) at p. 264. See also Canter v. Koehring Company, 283 So.2d 716 (La.1973).
Plaintiffs essentially argue that as the State of Louisiana exercised complete control over the drilling and the filling of the test hole, the state should be held liable as the hole was not properly filled, as evidenced by it caving in on at least two occasions. Plaintiffs assert liability may *865 be imposed upon defendant under various theories of recovery, primarily LSA-C.C. 2320, LSA-C.C. 2324 and stipulation pour autrui. Defendant argues that there is no evidence showing negligence on the part of the defendant and further, the test hole was not the same hole in which the Brents child died.
Before ascertaining whether liability may be imposed on the defendant, it is essential to first determine whether there was any negligence in the filling and abandonment of the test hole. After a review of the evidence, we conclude that the trial court was not clearly wrong in finding there was no negligence.
Thus, it is not necessary to consider whether the theories by which liability may be imposed on the defendant are applicable in the instant case, as each of the theories is dependent upon a finding that the test hole was negligently and improperly filled. The evidence does not support such a finding.
Although the evidence is somewhat conflicting, it appears that the hole in which the child fell was the test hole drilled in 1967 by Brooks and Prator. The majority of the testimony described the size of the hole in which the child died as being rather small in diameter which is consistent with the conclusion that it was the test hole rather than a dug well. Further, the test hole, in an alleged different location, could not be found despite a thorough search using a bulldozer.
The record established that the defendant exercised complete control over the drilling of the test hole. A representative of the Department of Public Works was at the site at all times and the department provided strict specifications that were required to be followed by Brooks and Prator. Although the specifications required that the test hole be filled with puddled clay and it was established that a small percentage of sand was used as fill material, the evidence is clear that the hole was properly filled and abandoned according to the standards and technology at that time. Freddie Lindy testified that sand was a better fill material than clay unless there was a concern about contaminating aquifers and would not cause a problem with respect to a hole later caving in. There is no evidence that bridging occurred in filling the test hole eventually resulting in the cave-in. Lindy testified bridging was not indicated as there was not a sizable amount of fill material remaining after the filling of the test hole.
A period of approximately fourteen years passed from the date the test hole was filled under the defendant's supervision until the death of the Brents child. The evidence established that during this extended period the site was no longer under the control of the defendant and the Town of Vivian had undertaken to fill the test hole on at least one occasion. One of any number of happenings could have intervened causing the hole to erode resulting in the cave-in.
For these reasons, the judgment of the trial court in favor of defendant, State of Louisiana, is affirmed. The costs of this appeal are assessed to plaintiffs, Daniel Brents and Mary Wilde Brents.
AFFIRMED.
NOTES
[1] Plaintiffs' appeal with reference to the Town of Vivian and Gulf Insurance Company and the appeal of the Town of Vivian and Gulf Insurance Company were dismissed during the pendency of this appeal.
[2] Completion of the work called for under the contract by Brooks and Prator was formally accepted by the Department of Public Works on September 22, 1967.