On December 14, 1993, M.B., the maternal grandmother, petitioned the juvenile court for temporary custody of two minor children of her daughter, R.H.M. The children were born March 6, 1992, and January 20, 1993. She alleged that R.H.M. did not provide appropriate hygiene or medical care for the children and that the father had "demonstrated no desire or inclination to provide for the needs of [the children] in the absence of the mother's ability to do so."
On February 7, 1994, the court ordered the Department of Human Resources ("DHR") to investigate M.B.'s home and the allegations contained in her petition, and to then submit a written report of its findings. DHR visited the homes of M.B. and of R.H.M., interviewed witnesses, and filed its report with the court on February 17, 1994.
On March 3, 1994, R.H.M. filed a motion asking the court to recognize her parental rights to her children, claiming that the grandmother had physical custody of the children and that she refused to relinquish control of them to her. She asked that the court order the grandmother to relinquish custody to her "until such time as there has been a hearing to determine custody."
After a hearing on March 30, 1994, the court ordered:
 "1. That the temporary legal custody of [the two children] is awarded to their maternal grandmother [M.B.].
 "2. That the mother [R.H.M.] is awarded liberal rights of visitation with the children but said visitation shall be only with the prior consent of the children's grandmother and the mother shall not remove the children from the jurisdiction of the Court.
 "3. [E.J.M.] is adjudicated the biological and legal father of [the children]. As [he] and the children's mother have recently married, the father shall exercise visitation with the children at the same time as the mother."
The mother appeals contending that the trial court abused its discretion in granting temporary custody to the grandmother, arguing that it relied upon a DHR report "that took every statement given by [M.B.] at face value, without verification, as valid and true."
We note at the outset that parental rights were not terminated and that the mother and *Page 616 
father were awarded "liberal rights of visitation."
R.H.M. and M.B. both testified at the hearing, as did the children's father and other witnesses. Also presented was the written report of Ann Floyd, a DHR social worker. The report revealed that R.H.M. has another child (not involved in this action) living with M.B. and that M.B. has reared that child since his birth four years ago. Additionally, the report revealed that R.H.M. admitted that her husband "beat her 7 or 8 times very badly and [she] remembers going to the hospital." As to the home of R.H.M., the report noted, "No baby beds, play pen, or any other baby furniture was observed in the home. No toys were observed or any baby items." DHR recommended "that temporary custody of the children be given to the grandmother due to their young age, health problems, and past neglectful incidents."
M.B. testified that one of the children was born with a hole in his heart, that as a result he requires daily medication, and that R.H.M. often forgets to give him the medication. There was conflicting testimony as to the allegations of neglect. At the close of the hearing, the trial judge stated, "I'm going to give this matter some further thought before I made a decision. . . . I need to reflect on what I have heard here as testimony and argument."
In an initial custody determination between a parent and a nonparent, the "best interest standard" applies. Ex parte J.P.,641 So.2d 276 (Ala. 1994). A parent seeking to gain custody of a child that she or he has previously given up, either voluntarily or because of a judgment, must show, by a preponderance of the evidence, that the change would materially promote the child's welfare and that the benefit gained by the change would more than offset the disruptive effect caused by uprooting the child. Ex parte McLendon, 455 So.2d 863 (Ala. 1984). Therefore, this court's primary concern, as was that of the trial court, is the best interest of the child.
In a custody dispute between a parent and a nonparent, as here, the parent has a prima facie right to custody. Ex parteTerry, 494 So.2d 628 (Ala. 1986). That presumption can be defeated, however, by showing that the parent is unsuited or unfit to have custody of the child. Id.
Apparently, the trial court, without a specific finding of unfitness, determined that, at this time, R.H.M. was not capable of caring for the children. There is a strong presumption of correctness favoring a court's findings in child custody cases when evidence is presented ore tenus; however, a finding of unfitness is necessary in a custody dispute between a parent and a nonparent. Id. Although there is evidence to support the trial court's determination, the judgment must be reversed, and the cause remanded for a finding as to the mother's fitness.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., concurs.
THIGPEN, J., concurs in part and dissents in part.