Casey Ragsdale ("the father") appeals from a judgment of the Randolph Circuit *Page 771 
Court modifying a 2003 judgment that had divorced him from Kary Ragsdale Hyatt ("the mother") and had awarded the parties joint legal custody of the child born of their marriage; the modification judgment under review awarded sole legal and physical custody of the child to the child's maternal grandparents, Joe Williamson and Kathy Williamson ("the maternal grandparents"). We reverse and remand.
The record reveals that the child was born in March 2001 and that the mother and the father married each other after the father's paternity of the child had been revealed by genetic testing after the child's birth. The mother and the father subsequently separated, and the trial court entered a judgment in 2003 divorcing the mother and the father and ratifying their proposed settlement agreement. Although neither the agreement nor the divorce judgment appear in the record, there is no dispute that that divorce judgment provided for joint legal custody of the child to be held by the mother and the father, with the mother's home serving as the "primary placement" and the father's home serving as the "secondary placement" for the child.
In early May 2006, the father filed a petition to modify the custody provisions of the divorce judgment, alleging that the father and his parents ("the paternal grandparents") had been the child's principal caregivers since the divorce judgment was entered and that a material change in circumstances had occurred since the divorce judgment was entered. The father also filed a motion for an immediate award of pendente lite custody and for a temporary order restraining the mother from removing the child from Alabama, accompanied by an affidavit of the father in which he testified to his belief that the mother had been using illicit drugs and had been abused by her new husband. After a temporary order was issued, the mother and the father entered into an agreement under which the child would, pending a final judgment, spend alternate weeks in the home of the father and in the home of the maternal grandparents and that the mother would have no overnight visitation with the child; the trial court entered a pendente lite custody order ratifying that agreement on May 23, 2006. The mother then answered the modification petition, denying its material allegations, and asserted a counterclaim for an increase in child support.
In August 2006, the maternal grandparents, acting through counsel who was also representing the mother, filed a motion to intervene in the action. In that motion, the maternal grandparents alleged that the child had lived in their
home for a majority of his life, that they supported the mother's position with respect to custody, and that they requested an award of custody of the child "as an alternative theory" if custody was due to be modified. The trial court granted the maternal grandparents' motion to intervene.
An ore tenus proceeding took place in the cause on April 4, 2007, during which testimony from certain witnesses called "out of turn" by counsel for the mother and the maternal grandparents was adduced, along with testimony from the father's witnesses. After the father had rested his case, counsel for the mother and the maternal grandparents orally moved for a "directed verdict" (albeit in actuality for a judgment on partial findings pursuant to Rule 52(c), Ala. R. Civ. P.), [1] asserting *Page 772 
that the custody-modification standard espoused in Ex parteMcLendon, 455 So.2d 863 (Ala. 1984), was applicable and that the father had failed to demonstrate a substantial change in circumstances that would warrant his being awarded custody. The father replied that the mother had relinquished her rights to the child to the maternal grandparents and that the father, as the child's parent, would have a prima facie right to custody in lieu of the maternal grandparents. The trial court stated that it would perform legal research, and counsel for the mother and the maternal grandparents suggested that further argument and testimony could be offered at a May 2007 hearing date. No transcript of that hearing appears in the record, and based upon the parties' indications that no further testimony was then adduced, it may be surmised that the maternal grandparents elected to stand on their dispositive motion at that hearing.
On June 7, 2007, the trial court entered a judgment denying the father's custody petition and the mother's child-support counterclaim. However, the trial court granted the maternal grandparents' alternative request for custody and awarded custody of the child to the maternal grandparents subject to what the trial court called the father's "visitation privileges as established by the" original divorce judgment; the mother was permitted visitation with the child at the maternal grandparents' discretion. The father was also directed to continue making child-support payments as directed under the divorce judgment. The father appealed from the judgment; the mother has not cross-appealed from that aspect of the judgment eliminating her custody rights as to the child.
As we have noted, the trial court's judgment was entered on partial findings because only the father's presentation of evidence in his case is shown by the record to have been completed. Under such circumstances, "the standard of review [is that formerly] applicable to rulings on motions for involuntary dismissal" under former Rule 41(b), Ala. R. Civ. P., i.e., "the ore tenus standard." Burkes Mech., Inc. v. Ft.James-Pennington, Inc., 908 So.2d 905, 910 (Ala. 2004). However, the ore tenus standard, which affords a presumption of correctness to the trial court's ruling, "is inapplicable `where the evidence is undisputed, or where the material facts are established by the undisputed evidence.'" Id. (quotingSalter v. Hamiter, 887 So.2d 230, 234 (Ala. 2004)).
In considering the merits of the father's appeal, we start by observing the following fundamental principles of the law of child custody:
 "In a custody dispute between a parent and a nonparent, the parent has a prima facie right to custody over the nonparent. Ex parte Terry, 494 So.2d 628 (Ala. 1986). This presumption does not apply, however, in a case in which the parent voluntarily forfeits his or her right to custody to a nonparent or where there is a finding of unfitness on the part of the parent. Any finding that the parent is unfit must be based on clear and convincing evidence. 494 So.2d at 633."
Ex parte G.C., 924 So.2d 651, 656 (Ala. 2005).[2] *Page 773 
In this case, the trial court did not make a specific finding of unfitness as to the father, and our cases have held that such a finding is required in order to sustain a judgment awarding custody to a nonparent on the basis of a parent's unfitness.See H.K. v. G.S.F., 877 So.2d 611, 612
(Ala.Civ.App. 2003); C.P. v. W.M., 806 So.2d 395, 398
(Ala.Civ.App. 2001); J.L. v. L.M., 805 So.2d 729, 733
(Ala.Civ.App. 2001); and R.H.M. v. State Dep't of HumanRes., 648 So.2d 614, 616 (Ala.Civ.App. 1994). Further, the maternal grandparents do not assert on appeal that the judgment under review can be sustained on the basis of anyimplicit finding of unfitness from clear and convincing evidence.
Because the father's fitness to act as a parent is not an issue, the sole basis upon which the trial court's custody judgment might possibly be sustained is an implicit determination of voluntary relinquishment. Our opinions indicate that the ground of voluntary relinquishment, like unfitness, may be sustained only upon a showing of "clear and convincing" evidence. SeeL.R.M. v. D.M., 962 So.2d 864, 874 (Ala.Civ.App. 2007);J.W. v. D.W., 835 So.2d 206, 210 (Ala.Civ.App. 2002); and C.B.B. v. J.S.D., 831 So.2d 620, 621
(Ala.Civ.App. 2002); see also Ex parte G.C., 924 So.2d at 656
(noting that certiorari review had been granted, in part, "to determine whether there was clear and convincing evidence that the father . . . had voluntarily relinquished custody of the child to the grandparents").[3] Moreover, Alabama caselaw provides that "an examination of whether a father of a child born to unmarried parents relinquished his right to custody of the child must begin at the point in time when the father was legally declared by a court to be the father of the child,"Ex parte G.C., 924 So.2d at 657, which in this case occurred in 2003 when the parents were divorced, the father was awarded joint legal custody of the child, and the father was named the child's "secondary placement." Thus, under the authorities stated above, we must determine whether the record contains clear and convincing evidence from which the trial court could implicitly have concluded that the father, afterthe 2003 divorce but before filing his May 2006 custody-modification petition, "voluntarily forfeit[ed] his
. . . right to custody to . . . nonparent[s]," i.e., to the maternal grandparents. Id. at 656.
The record reveals that between the time that the divorce judgment was entered in 2003 and the entry of the pendente lite custody order in May 2006, the child was in the care of the father or his designees (typically, the paternal grandparents) on Tuesday and Wednesday of every week and on alternating weekends. In contrast, care of the child during the mother's assigned custodial periods was left to the maternal grandparents; the mother admitted at trial that the child had stayed with her "about five times" at the residence where she lived during the period before May 2006, and the father admitted that, since the divorce, the child had lived with the maternal grandparents and had "never really lived with his mom" during the mother's custodial periods. The father testified that even before the entry of the pendente lite custody order, he had been *Page 774 
claiming the child from and delivering the child to the maternal grandmother during custodial transfers, and he replied "yes" to a question whether he and the maternal grandparents had "basically raised the child."
Recent appellate opinions involving questions of voluntary forfeiture on the part of noncustodial parents have established a principle that such parents may voluntarily relinquish their primary, but inchoate, custodial rights by inaction, i.e., by allowing nonparents to assume the role of primary, caregivers in their stead. For example, in Ex parte G.C., the Alabama Supreme Court held that a man who had been adjudicated to be a child's father in August 2000 had voluntarily relinquished his preeminent right to custody to the child's maternal grandparents; the Alabama Supreme Court noted that the father in that case "visited with his son sporadically, . . . did not assist in his care, and . . . abdicated any and all decisions with regard to the health and welfare of the child to the mother and the maternal grandparents." 924 So.2d at 657. The Alabama Supreme Court cited with approval our decision in K.C. v.D.C., 891 So.2d 346, 347 (Ala.Civ.App. 2004), in which we upheld a determination of voluntary forfeiture as to a child's noncustodial father based upon evidence indicating that the father had "acquiesced in the child being reared by the grandparents provided that he was allowed to visit with
the child" (emphasis added), notwithstanding the father's payment of child support, day-care expenses, and school tuition on the child's behalf.
However, it must be remembered that the father in this case was awarded joint legal custody and secondary physical custody of the child in 2003. The father testified that, since that time, the maternal grandparents and he had reared the child, and there is no evidence indicating that the father declined to exercise the particular custodial rights that were allocated tohim under the divorce judgment and the pendente lite order. The father testified to routinely waking with the child before school hours, preparing his breakfast, and dressing and grooming him, as well as going over the child's school homework with him each evening during the father's custodial periods. The father further testified that he had provided health insurance for the child and that he had paid child support from the entry of the divorce judgment until the trial on his modification petition, including the period after the trial court's pendente lite order in May 2006. Although the father did admit that he expected his parents, i.e., the paternal grandparents, to help him with caring for the child, he testified to being "physically and emotionally and spiritually" capable of caring for the child.
The maternal grandparents contend in their brief that the father "has left partial custody of the child with the maternal grandparents since" the entry of the 2003 divorce judgment (emphasis added), and that such conduct amounts to a voluntary forfeiture of his custodial rights. The maternal grandparents appear to base that assertion upon the father's admissions that the maternal grandmother "is well capable" of caring for the child and that she has been "very active" and involved in the child's life from his birth. However, although the father may properly be said to have acquiesced in the maternal grandparents' virtual assumption of the role of themother in the child's life, the father has, for all that appears in the record, consistently performed, with the help of his family, the roles allocated to him as a joint, yet secondary, custodial parent in the 2003 divorce judgment and allocated to him as a true joint custodian under the May 2006 pendente lite order. In other words, the record does not reflect clear and convincing evidence of voluntary action or inaction on the part of the father to relinquish *Page 775 
those custody rights he was awarded under the trial court's divorce judgment and its later pendente lite order.
Based upon the foregoing facts and authorities, the judgment on partial findings of the trial court in which custody of the child was awarded to the maternal grandparents, subject to rights of visitation in the father, is reversed. Because the judgment is due to be reversed on the grounds we have previously stated, we do not reach the father's alternative contention, i.e., that the trial court erred in failing to make an explicit determination regarding whether domestic-violence incidents involving the mother's new husband amounted to a material change in circumstances since the entry of the trial court's 2003 judgment concerning custody. But see Ex parte Fann,810 So.2d 631, 638 (Ala. 2001) (overruling Fesmire v.Fesmire, 738 So.2d 1284 (Ala.Civ.App. 1999), as to the necessity in custody actions of explicit findings concerning domestic abuse); A.M.J. v. K.D.J., 777 So.2d 146, 148
(Ala.Civ.App. 2000) (holding that only abusive conduct that may have been perpetrated by parties seeking custody
triggers the provisions of the Custody and Domestic or Family Abuse Act, § 30-3-130 et seq., Ala. Code 1975).[4]
In reversing the trial court's judgment, however, we note that the trial court entered its judgment in this case before the maternal grandparents had completed the presentation of their evidence. Indeed, the maternal grandparents themselves were never called to testify concerning any interactions they might have had with the father that might bear on the question of voluntary forfeiture. Because the trial court's judgment on partial findings was entered at the close of the father's evidence, we agree with the maternal grandparents that in lieu of directing the trial court to immediately enter a judgment in favor of the father, we should remand the cause for further proceedings to allow the maternal grandparents to fully present their case. See White v. Rimrock Tidelands, Inc.,414 F.2d 1336, 1340 (5th Cir. 1969) (analogous holding involving reversal of judgment entered pursuant to "involuntary dismissal" provisions of former Rule 41(b), Fed.R.Civ.P.); accordCaro-Galvan v. Curtis Richardson, Inc., 993 F.2d 1500, 1504
(11th Cir. 1993) ("If [an appellate] court reverses an order of involuntary dismissal, the case proceeds as if the [trial] court had denied the motion for dismissal in the first place."). The trial court thus remains free to enter a new judgment at the close of all the evidence that is consistent with the legal principles we have set forth.
REVERSED AND REMANDED.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.
[1] The interplay between Rule 50, Ala. R. Civ. P., which before 1995 authorized "directed verdicts" based upon a party's failure of proof in jury trials and which now authorizes "judgments as a matter of law" in similar situations, and Rule 52(c), which provides for judgments entered on partial findings in non-jury cases and which replaced the "involuntary dismissal" procedure in the pre-1995 version of Rule 41(b), Ala. R. Civ. P., has been discussed at length by this court. See Logginsv. Robinson, 738 So.2d 1268, 1270-71
(Ala.Civ.App. 1999).
[2] Two recognized exceptions to the principle stated inEx parte G.C. are (1) situations involving the disposition of children who are "dependent" as defined in the Juvenile Code, see O.L.D. v. J.C., 769 So.2d 299, 302
(Ala.Civ.App. 1999); and (2) situations in which a non-parent has previously been awarded custody by a court of competent jurisdiction, see Gurley v. Kennemore, 668 So.2d 1, 3
(Ala.Civ.App. 1993). This case fits into neither category.
[3] Such a heightened evidentiary standard is arguably consonant with the principle that a simple "informal arrangement" regarding another's person's care of a parent's children, in and of itself, is not properly deemed a waiver to that other person of the parent's custodial rights. See Exparte Bryowsky, 676 So.2d 1322, 1325 (Ala. 1996); seealso M.D.K. v. V.M., 647 So.2d 764, 765 (Ala.Civ.App. 1994).
[4] We discern from the mother's decision not to appeal from that aspect of the judgment divesting her of her previous primary-custody rights that she no longer seeks custody.