DONALDSON, Judge.
Robert J. Nicke (“the father”) appeals from a judgment of the Shelby Circuit Court (“the trial court”) addressing two separately filed actions relating, respectively, to the support of the father’s minor children, R.N. and D.N., and to the custody of R.N. The trial court found that the father owes $43,655 in child-support ar-rearage to the children’s maternal grandparents, Frank Minter and Patsy Minter (“the grandparents”). The trial court’s judgment also removes custody of R.N. from the father and places custody of that child with the grandparents. In addition, in the case involving the child-support ar-rearage, the grandparents had sought to have the • trial court hold the father in contempt. Because the judgment does not fully adjudicate the grandparents’ contempt claim against the father, the judgment, insofar as it addresses the contempt and child support case, is nonfinal, and, as a result, we must dismiss the appeal as to that case. The judgment.is final as to the grandparents’ separate custody case, however, and that case is properly before us on appeal. Because the record does not show that the father was not fit to have *276 custody of his own child, we reverse the portion of the judgment regarding custody of R.N., and we remand the cause to the trial court.

Facts and Procedural History

The father and Margaret A, Nicke (“the mother”) have two children, R.N. and D.N. (“the children”). On October 1, 2007, the father and the mother were divorced. The divorce judgment has since been modified several times.
The grandparents intervened in the first modification action. On February 24, 2010, the trial court entered a consent order reached by agreement of all parties. Pursuant to the consent order, the grandparents received “primary” physical custody of the children, the father and the mother were to be “the secondary custodial parents,” and all the parties shared joint legal custody. The father was ordered to pay $1,500 in child support each month to the grandparents, and he agreed to pay the grandparents $12,085 in child-support arrearage.
On March 8, 2011, the trial court entered a judgment placing sole legal and physical custody of the children with the grandparents. The trial court found the father in contempt for interfering with the grandparents’ physical custody of the children and for failing to pay his child-support obligation and the child-support ar-. rearage owed to the grandparents. The judgment awarded the grandparents $23,655 in child-support arrearage.
At some point, the State Department of Human Resources (“DHR”) became involved in the custody of the children. The record contains no information as to the circumstances of DHR’s involvement. On May 31, 2013, the trial court entered an order in an action in which the father, the mother, the grandparents, and DHR were parties. The order relieved DHR of custody and supervision of the children. In that order, the father received sole physical custody of the children, and the mother and the father were granted joint legal custody. The trial court stated that “[a]ll pending Motions not directly addressed by this Order are denied.”
On June 25, 2013, the grandparents filed a motion to alter, amend, or vacate the May 31, 2013, order. The grandparents requested that the trial court address the child-support arrearage owed by the father to the grandparents. The record does not contain a ruling by the trial court on that motion.
On July 21, 2014, the grandparents filed a contempt petition. The case commenced by the filing of that petition was docketed as case number DR-05-897.06 (“the .06 case”). The grandparents sought payment of the child-support arrearage owed by the father when the children were in their custody and a finding of contempt against the father for willfully failing to pay his court-ordered obligations. On August 15, 2014, the father filed a motion to dismiss the petition and a motion for sanctions. He argued that the grandparents’ petition was barred by the doctrine of res judicata, and he sought compensation for legal expenses as sanctions against the grandparents.
On September 15, 2014, the grandparents filed a petition for a modification of custody. The case commenced by the filing of that petition was docketed as case number DR-05-897.07 (“the .07 ease”). The grandparents sought custody of R.N. and child support from the father, alleging material and substantial changes in the circumstances since the entry of the May 31,2013, order.
On October 15, 2014, the trial court conducted a hearing on both the .06 and .07 cases. A judge sitting specially had been appointed to preside over the cases after *277 the judge originally assigned to the cases recused himself. There is no order in the record consolidating the .06 and .07 cases.
On March 28, 2015, the trial court entered the following judgment:
“The Court, having heard the testimony and argument of Counsel for the [grandparents] and the [father] on the 15th day of October, 2014, and for the relief sought from the [grandparents] on their Petition to modify and their Petition for Rule Nisi pending, the Court finds the following:
“1. Custody of [R.N.] shall be awarded to the [grandparents]. The [father] shall immediately provide the [grandparents] with an insurance card for the minor child.
“2. [R.N.] shall have visitation with the [father] and the child’s sibling at the discretion of the [grandparents]. “3. The [father] shall be entitled'to copies of all academic records of [R.N.].
“4. During the hearing on October 15, 2014, this Court Ordered the [father] to provide proof of his income, a Child Support Form 41, and a list of his expenses and other income since the ■ Court’s prior Orders, all to be provided -within one week. The [father] failed to provide the same, although he testified that he made $7,500 per month in payments from a private disability policy.
“5. The Court finds there is an outstanding judgment for child support and unpaid medical expenses owed by the [father] to the [grandparents] in the amount of $23,655, from an Order entered by the Court on March 8, 2011. The Court ordered the [father] be incarcerated at that time if he failed to pay said sum to the [grandparents], as well as future child support in accordance with the Order. The [father] paid neither.
“6. The Court finds that at the time of this hearing, the [father’s] outstanding child support obligation owed to the [grandparents] totals $43,655. The [grandparents] are awarded a judgment against the [father] in said amount.
“7. The Court sets this matter for a hearing on the 2nd day of April, 2015, at 10:00 am, to determine whether the [father] is in willful contempt of the prior orders in this case, for his refusal to pay any portion of the judgment against him or of the child support obligation due subsequent to said judgment, despite his ability to do so. “8. That all other relief requested by the parties is denied.”
There is nothing in the record to indicate that the trial court adjudicated the contempt claim that was set for a hearing on April 2, 2015.
On May 1, 2015, the father filed a notice of appeal of the March 23, 2015, judgment to this court. On appeal, the father argues that the doctrine of res judicata barred the grandparents’ contempt claim regarding the nonpayment of his child-support ar-rearage and that the judge presiding over the .06 and .07 cases was improperly appointed. Regarding the custody of R.N., the father argues that the judgment lacks a required finding of his unfitness as the natural parent of the child and that insufficient evidence supports the placement of custody of the child with the grandparents. The grandparents did not file a brief on appeal.

Discussion

Initially, we note that a contempt claim was filed against the father in the .06 action, that the contempt claim was set for a hearing, and that there is no adjudication of the contempt claim in the record. As’ a *278 threshold matter, we must first determine whether the appeal is taken from a final judgment in the .06 case. “ ‘[J]urisdictional matters are of such magnitude that we take notice of them at any time .and do so even ex mero.motu.’” Raybon v. Hull, 17 So.3d 673, 675 (Ala.Civ.App.2009) (quoting Nunn v. Baker, 518 So.2d 711, 712 (Ala.1987)). “ ‘The question whether an order appealed from is final is jurisdictional, and the reviewing court, on a determination that the order is not final, has a duty to dismiss the case on its own motion.’ ” Hinson v. Hinson, 745 So.2d 280, 281 (Ala.Civ.App.1999) (quoting Powell v. Powell, 718 So.2d 80, 82 (Ala.Civ.App.1998)).
The appellate jurisdiction of this court extends only to final judgments. See § 12-22-2, Ala.Code 1975.
“An order that does not dispose of all claims or determine the rights and liabilities of all the parties to an action is not a final judgment. See Stone v. Haley, 812 So.2d 1245 (Ala.Civ.App.2001). In such an instance, an appeal may be had ‘only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.’ See Rule 54(b), Ala. R. Civ. P.; Baker v. Johnson, 448 So.2d 355, 358 (Ala.1984).”
Eubanks v. McCollum, 828 So.2d 935, 937 (Ala.Civ.App.2002).
The March 23, 2015, judgment sets the contempt claim in the .06 case for a hearing and does not fully adjudicate the grandparents’ petition to hold the father in contempt in the .06 case. The judgment is therefore nonfinal in regard to the .06 case because there is “ ‘something more to do.’ ” Wesley v. Brandon, 419 So.2d 257, 258 (Ala.Civ.App.1982) (quoting Sexton v. Sexton, 280 Ala. 479, 481, 195 So.2d 531, 533 (1967)) (observing that whether an order is final may be phrased as whether there is “‘something more for the [trial] court to do’ ”). We have no jurisdiction over the issues raised in the .06 case and must dismiss the appeal as to that case.
Regarding the .07 case, the judgment fully adjudicates the grandparents’ petition for a modification of custody by placing custody of R.N. with them, by awarding visitation to the father, and by stating “[t]hat all other relief requested by the parties is denied.” Therefore, the judgment is final as to the .07 case, and that portion of the judgment addressing the .07 case is properly before us on appeal.
The father first argues that the judge presiding over the .07 case was improperly appointed. However, the record lacks any indication that the father made an objection to the appointment of the judge before the trial court. “[An appellate court] cannot consider arguments raised for the first time on appeal; rather, [its] review is restricted to the evidence and arguments considered by the trial court.” Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992). Accordingly, we decline to consider the father’s argument.
The father next argues that the judgment lacks a finding of his unfitness as a parent that is required in order for him to lose custody of R.N. In Ex parte Terry, 494 So.2d 628 (Ala.1986), our supreme court established the standard for a trial court to apply in a custodial dispute between a parent and nonparent:
“‘The prima facie right of a natural parent to the custody of his or her child, as against the right of custody in a nonparent, is grounded in the common law concept that the primary parental right of custody is in the best interest and welfare of the child as a matter of law. So strong is this presumption, absent a showing of voluntary forfeiture of that right, that it can be overcome only by a finding, supported by competent *279 evidence, that the parent seeking custody is guilty of... misconduct or neglect to a degree which renders' that parent an unfit and improper person to he entrusted with the care and upbringing of the child in question.’ ”
494 So.2d at 632 (quoting Ex parte Mathews, 428 So.2d 68, 59 (Ala.1983)). “[A] finding of unfitness under Ex parte Terry must be made expressly.” C.P. v. W.M., 806 So.2d 396, 398 (Ala.Civ.App.2001). Furthermore, a finding of unfitness must be supported by clear and convincing evidence. See Ex parte Berryhill, 410 So.2d 416 (Ala.1982).
The parental presumption expressed in Ex parte Terry has two well-established exceptions. Our supreme court has stated that
“the parental ‘presumption does not apply after [1] a voluntary forfeiture of custody or [2] a prior decree removing custody from the natural parent and awarding it to a nonparent.’ Ex parte McLendon, 465 So.2d 863, 865 (Ala.1984). Where these exceptions apply, ‘“the parent will not be permitted to reclaim the custody of the child, unless [s]he can show that a change of the custody mil materially promote h[er] child’s-welfare,”’ Id. at 865 (emphasis added) (quoting Greene v. Greene, 249 Ala. 155, 157, 30 So.2d 444, 445 (1947), and Stringfellow v. Somerville, 95 Va. 701, 29 S.E. 685, 687 (1898)).”
Ex parte D.J., 645 So.2d 303, 306 (Ala.1994).
In this case, the May 31, 2013, order placed custody of the children with the father, and it was entered- after the entry of the March 2011 order placing custody of the children with the grandparents. Therefore, the father had physical custody of R.N. before the grandparents’ petition was filed in the .07 case, and the exception to the parental presumption- based on a previously-, entered judgment removing custody does not apply in this case.
In their petition for custody, the grandparents alleged that the father left R.N. with her possessions at their house without any explanation. Presumably, the grandparents intended to assert that the father had voluntarily forfeited custody. . The judgment lacks any finding as to whether the father voluntarily forfeited custody. The record does not contain a transcript of the October 15, 2014, hearing and is devoid of any evidence regarding the custody issue. Therefore, we cannot determine whether the evidence would support an implicit finding of voluntary forfeiture.
Although'“[tjhere is a strong presumption of correctness favoring a court’s findings in child custody cases when evidence is presented ore tenus ..., a finding of unfitness is necessary in a custody dispute between a parent and a nonparent.” R.H.M. v. State Dep’t of Human Res., 648 So.2d 614, 616 (Ala.Civ.App.1994). Because the trial court must expressly find the father unfit as a parent as long as the parental presumption applies, we cannot assume, without supporting evidence, clear and convincing in nature, that the trial court found an exception negating the parental presumption by placing custody of R.N. with the grandparents. Therefore, based on the record and the lack of a finding of unfitness, we conclude that neither of the exceptions to the parental presumption apply in this case.
The judgment lacks an express finding of unfitness of the father. As a result, we reverse the judgment placing custody of R.N. with the grandparents, and we pre-termit the. father’s remaining arguments regarding the trial court’s custody determination. See L.A.C. v. T.S.C., 8 So.3d 322, 325 (Ala.Civ.App.2008)(holding that “the trial court erred when it made-mo *280 express finding that the parents were unfit before awarding custody of the children to DHR”). We remand the cause to the trial court to reconsider the evidence it has already received, to make a custody determination, and to enter a judgment in accordance with this opinion.
For the foregoing reasons, we dismiss the appeal as to the .06 case, and we reverse the judgment and remand the cause as to the .07 case.
APPEAL DISMISSED AS TO CASE NUMBER DR-05-897.06; JUDGMENT REVERSED AND CAUSE REMANDED AS TO CASE NUMBER DR-05-897.07.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.